**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MARK BLYTHE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| MORGAN STANLEY SMITH BARNEY, LLC | ) ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) ) ) | |

Plaintiff Mark Blythe ("Plaintiff") brings this Class Action Complaint against Morgan Stanley Smith Barney, LLC ("Morgan Stanley" or "Defendant"), as an individual and on behalf of all others similarly situated, and alleges as follows:

## I. INTRODUCTION

1.      This is a consumer class action brought by Plaintiff, individually and on behalf of all others similarly situated ("Class Members"), whose personally identifiable information ("PII"), including, without limitation, names, Social Security numbers, passport numbers, addresses, telephone numbers, email addresses, account numbers, dates of birth, income, asset value and holding information, was compromised as a direct result of Morgan Stanley's failure to adequately protect, secure, and prevent the unauthorized disclosure of customer PII.

2.      Morgan Stanley is a global financial services company that sells securities and other financial goods and services to customers, including corporations, governments,

institutions, and individuals.[1] For the second quarter ending June 30, 2020, Morgan Stanley reported net revenues of $13.4 billion.[2]

3.    To sign up for one of Morgan Stanley's various accounts offered, a customer must provide Morgan Stanley his or her PII and the PII for anyone else associated with the account. Morgan Stanley then keeps, stores, and maintains this PII on Morgan Stanley's computer hardware.

4.    Plaintiff and Class Members trusted Morgan Stanley to adequately protect, store, and maintain their PII.

5.    In July 2020, Morgan Stanley began sending data breach notifications to several state Attorneys General[3] and Morgan Stanley customers[4] about two data security incidents, one in 2016 and one in 2019 (collectively, the "Data Breach"), impacting Morgan Stanley account holders.

6.    In 2016, "Morgan Stanley closed two data centers and decommissioned computer equipment that processed client information in both locations . . . [Morgan Stanley] hired a

---

[1] *See* Morgan Stanley's December 19, 2019 SEC Form 10-K, *also availabl*e *at* https://www.sec.gov/ix?doc=/Archives/edgar/data/895421/000089542120000265/msq4201910k. htm.

[2] Morgan Stanley Second Quarter 2020 Earnings Result, MORGANSTANLEY.COM, *available at* https://www.morganstanley.com/about-us-ir/shareholder/2q2020.pdf.

[3] *See* Letter from Gerard Brady, Morgan Stanley's Chief Information Security Officer, to the Honorable Gordon MacDonald, Attorney General of New Hampshire (July 10, 2020), **a true and correct copy of which is attached hereto as Exhibit A ("Ex. A")**; *see also* Letter from Gerard Brady, Morgan Stanley's Chief Information Security Officer, to the Honorable Tom Miller, Attorney General of Iowa (July 10, 2020), *available at* https://www.iowaattorneygeneral.gov/media/cms/7102020_Morgan_Stanley_DF029292C1895.p df.

[4] *See* Morgan Stanley's Notice of Data Breach to consumers, filed with the Iowa Attorney General, **a true and correct copy of which is attached hereto as Exhibit B ("Ex. B").**

vendor to remove the data from the devices."[5] Morgan Stanley subsequently learned "that certain devices believed to have been wiped of all information still contained some unencrypted data."[6] This computer equipment containing unencrypted data is now missing, which makes the unencrypted PII contained in the missing equipment easily available to unauthorized third parties.

7.    In 2019, "Morgan Stanley disconnected and replaced certain computer servers . . . in local branch offices."[7] These computer servers still contained customers' personal information. Morgan Stanley subsequently learned that a "software flaw . . . resulted in small amounts of previously deleted data remaining on the disks in unencrypted form."[8] Like the 2016 unencrypted data, these computer servers are also now missing, which makes the unencrypted PII contained in the missing computer servers easily available to authorized third parties.

8.    Despite the numerous data breaches by companies nationwide in the months and years preceding the Data breach,[9] and despite Morgan Stanley's recent data breaches involving stolen unencrypted customer information only a few years prior to this Data Breach,[10] Morgan

---

[5] Ex. A at 1.

[6] *Id.*

[7] Ex. A at 1.

[8] *Id.*

[9] *See Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center and CyberScout*, IDENTITY THEFT RESOURCE Center (Jan. 19, 2017) (noting a significant increase in data breaches around the time of the 2016 Morgan Stanley data security incident), *available at* https://www.idtheftcenter.org/2016databreaches/.

[10] U.S. Securities and Exchange Commission, SEC: Morgan Stanley Failed to Safeguard Customer Data, Press Release, SEC.GOV (June 2016) ("Morgan Stanley . . . has agreed to pay a $1 million penalty to settle charges related to its failures to protect customer information, some

Stanley failed to employ adequate security measures to safeguard, protect, and prevent unauthorized disclosures of customer PII to third parties.

9.    As alleged herein, the injuries to Plaintiff and Class Members were directly and proximately caused by Morgan Stanley's failure to implement and maintain adequate and reasonable data security measures necessary for protecting Plaintiff's and Class Members' PII.

10.    Plaintiff and the Class Members have had their privacy rights violated, have been exposed to the increased risk of fraud and identity theft, and have otherwise suffered damages.

11.    As such, Plaintiff and the Class Members seek (i) actual damages, economic damages, statutory damages and/or nominal damages, (ii) exemplary damages, (iii) injunctive relief, and (iv) attorneys' fees, litigation expenses and costs.

12.    Plaintiff and the Class Members assert claims for negligence, negligence *per se*, breach of contract (express and implied), invasion of privacy, unjust enrichment, and declaratory and injunctive relief.

## II. PARTIES

13.    Plaintiff Mark Blythe is a Citizen of the State of Florida, residing in Flagler County, Florida. In or about 2012, Mr. Blythe signed up for a stock account and an annuity account through Morgan Stanley. When he opened his accounts in or about 2012, Mr. Blythe supplied Morgan Stanley with his name, address, and social security number. Both accounts were closed on October 3, 2017. However, Morgan Stanley had Mr. Blythe fill out additional forms and complete several steps to transfer the accounts to another financial services company on or about the middle of 2018. As a Morgan Stanley account holder, Mr. Blythe paid annual fees and transactions fees per transaction.

---

of which was hacked and offered for sale online."), *available at* https://www.sec.gov/news/pressrelease/2016-112.html.

14.    On or about July 28, 2020, Mr. Blythe received Morgan Stanley's *Notice of Data Breach,* dated July 10, 2020. The Notice specifically stated that the information associated with his accounts was subject to the Data Breach. As a result of the Data Breach, Mr. Blythe's most sensitive information is compromised, causing lifelong data insecurity. In or about July 2020, Mr. Blythe suffered a string of identity thefts and misuse of his personal information through no fault of his own. On or about July 6, 2020, an unknown fraudster opened a checking account with a credit union in Mr. Blythe's name. On or about July 7, 2020, an unknown fraudster applied for a Small Business Administration ("SBA") loan with the same credit union in Mr. Blythe's name. On or about July 15, 2020, an unknown fraudster opened a savings account in Mr. Blythe's name. On or about July 17, 2020, Mr. Blythe received notice from a credit union that the credit union pulled Mr. Blythe's credit during the process of making an SBA loan to an unknown fraudster.

15.    As a result of the Data Breach, Mr. Blythe spent significant time attempting to contain the consequences of his compromised PII by: (a) verifying the legitimacy of the *Notice of Data Breach*; (b) communicating with Experian, a credit reporting agency; and (c) by investigating and attempting to stop fraudulent uses of his compromised PII by unauthorized third-parties, which included filing a police report with the Flagler Beach Police Department and notifying a credit union multiple times of fraudulent uses of Mr. Blythe's PII at that credit union. For the foreseeable future, Mr. Blythe anticipates spending considerable time and money to contain the impact of the Data Breach.

16.    Mr. Blythe is extremely careful about sharing his PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source. Prior to the recent fraudulent transactions, Mr. Blythe has not experienced fraud or identity theft. As a direct result

5

of Morgan Stanley's failure to adequately safeguard Mr. Blythe's personal information, Mr. Blythe has been injured.

17.    Defendant Morgan Stanley is a limited liability company organized under the laws of Delaware, with its principal place of business at 1585 Broadway, New York, NY 10036. Morgan Stanley is a multinational investment bank and financial services company with multiple offices throughout this District, and offices in over 40 countries with more than 60,000 employees.

18.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

19.    All of Plaintiff's claims stated herein are asserted against Defendant Morgan Stanley and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005, because (1) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, (2) there are more than 100 members in the proposed class, and (3) at least one member of the class is a citizen of a state different from Morgan Stanley. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21.     This Court has personal jurisdiction over Morgan Stanley because at all relevant times Morgan Stanley maintained and maintains its principal place of business in New York, regularly conducts business in New York, and has sufficient minimum contacts in New York.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because Morgan Stanley conducts substantial business in this District, is headquartered in this District, and is deemed to be a citizen of this District. A substantial part of the events and/or omissions giving rise to the claims herein occurred, in part, within this District.

## IV. FACTUAL ALLEGATIONS

### A.    Background

23.     Plaintiff and the Class Members are current and former customers of Morgan Stanley.

24.     As a condition to providing its financial services to its individual customers, Morgan Stanley collects and maintains PII that Morgan Stanley solicits from its customers, including but not limited to: "Social Security number and income;" "investment experience and risk tolerance;" and "checking account number and wire transfer instructions."[11]

25.     Customers may also entrust Morgan Stanley with additional PII, including but not limited to, bank account numbers, passport numbers, mailing and billing addresses, telephone numbers, emails addresses, and dates of birth.

26.     Morgan Stanley collects, maintains, and stores its customers' highly sensitive trove of PII and uses this information for its own commercial purposes.

---

[11] Morgan Stanley, *U.S. Customer Privacy Policy and Notice* (effective January 2020) ("Privacy Notice"), *available at* https://www.morganstanley.com/disclaimers/im-customer-privacy-notice.pdf.

27.     In turn, Plaintiff and the Class Members trusted and relied on Morgan Stanley to keep their PII confidential, to use the PII for purposes of the goods and services provided by Morgan Stanley only, and to make only authorized disclosures of this PII.

**B.     The Morgan Stanley Data Breach**

28.     On or about July 9, 2020, Morgan Stanley sent Plaintiff and the Class Members a *Notice of Data Breach* notifying Plaintiff and Class Members of two separate Morgan Stanley data security incidents (the Data Breach) that compromised Plaintiff's and Class Members' PII.[12]

29.     In the *Notice of Data Breach*, Morgan Stanley first notified Plaintiff and Class Members of a 2016 data center data security incident:

> In 2016, Morgan Stanley closed two data centers and decommissioned the computer equipment that processed client information in both locations. As is customary, we contracted with a vendor to remove the data from the devices. We subsequently learned that certain devices believed to have been wiped of all information still contained some unencrypted data. We have worked with outside technical experts to understand the facts and any potential risks.[13]

30.     In that same *Notice of Data Breach*, Morgan Stanley informed Plaintiff and Class Members of a separate 2019 data security incident:

> Separately, in 2019, Morgan Stanley disconnected and replaced a computer server in a local branch office. That server had stored information on encrypted disks that may have included personal information. During a recent inventory, we were unable to locate that device. The manufacturer subsequently informed us of a software flaw that could have resulted in small amounts of previously deleted data remaining on the disks in unencrypted form.[14]

31.     According to Gerard Brady, Morgan Stanley's Chief Information Security Officer, the unencrypted data disclosed in the Data Breach included Plaintiff's and the Class

---

[12] *See* Ex. B.

[13] Ex. A at 1.

[14] *Id.*

Members' unencrypted PII, including, *inter alia*, their "account names and numbers (at Morgan Stanley and any linked bank accounts), Social Security number, passport number, contact information, date of birth, asset value and holding data."[15]

32.    Morgan Stanley further announced it was belatedly "taking appropriate additional security measures to strengthen the security of its system,"[16] which are PII data security measures, protocols, procedures, and policies it should already have instituted and had in place to prevent the Data Breach.

33.    In addition to its *Notice of Data Breach* to customers, Morgan Stanley sent letters notifying various state Attorneys General of the Data Breach.[17]

34.    In its *Notice of Data Breach* and its letters to the Attorneys General, Morgan Stanley disclosed the same key admissions: (1) Morgan Stanley possessed hardware that contained unencrypted PII; (2) the hardware containing unencrypted PII "left [Morgan Stanley's] possession;" and (3) that unencrypted PII that "left [Morgan Stanley's] possession" included account holder information "including account names and numbers (at Morgan Stanley and any linked bank accounts), Social Security number, passport number, contact information, date of birth, asset value and holdings data."[18]

35.    Unsettlingly, Morgan Stanley is unable to account for the equipment containing Plaintiff's and the Class Members' unencrypted PII, which is missing. As a result, Plaintiff's and

---

[15] *Id.*

[16] *Id.*

[17] *See* Ex. A.

[18] Exs. A & B.

the Class Members' PII, which Morgan Stanley failed to properly maintain and protect, can easily end up in the hands of identity thieves or in the hands of other unauthorized third-parties.

36.    Morgan Stanley failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for current and former customers, causing Plaintiff's and the Class Members' PII to be exposed.

## C.    Morgan Stanley's Privacy Policy

37.    Morgan Stanley makes certain representations, warranties, and commitments to its customers regarding the privacy of customers' PII.

38.    In its Privacy Pledge, Morgan Stanley agrees to the following:

Morgan Stanley's long-standing commitment to safeguard the privacy of information our clients entrust to us is essential to our goal to be the world's first choice for financial services. Protecting the confidentiality and security of client information has always been an integral part of how we conduct our business worldwide.

We Pledge to continue to ensure that our global business practices protect your privacy.[19]

39.    Morgan Stanley fell far short of its obligations stated in the Privacy Pledge: Morgan Stanley failed to adequately maintain, store, and protect Plaintiff's and Class Members' PII.

40.    Further, the Data Breach and disclosure to unauthorized third-parties directly violates Morgan Stanley's Privacy Policy. Morgan Stanley's Privacy Policy states, among other things, that Morgan Stanley "may share Personal Information at your request."[20]

---

[19]    Morgan Stanley, *Privacy Pledge*, *available at* https://www.morganstanley.com/privacy-pledge.

[20]    Morgan    Stanley    U.S.    Privacy    Policy    and    Notice,    *available    at* https://www.morganstanley.com/disclaimers/us-privacy-policy-and-notice.

41.    Morgan Stanley's Privacy Policy and Notice further lists the following specific and limited permissible purposes for which Morgan Stanley may use and disclose all or a portion of its customers' PII:

a.    Morgan Stanley's affiliates;

b.    A customer's agents, representatives, or other persons acting on the customer's behalf or to whom the customer instructs or authorizes Morgan Stanley to disclose the customer's personal information;

c.    If someone is a representative of a customer that is an entity or institution, to the entity or institution that person represents;

d.    Morgan Stanley's service providers;

e.    Third parties that are necessary to administer services to the client or the client someone represents or is associated with, such as general partners of funds Morgan Stanley advises or manages;

f.    Morgan Stanley's agents and representatives, such as attorneys, auditors, and other professionals;

g.    Government, legal regulatory, supervisory, or other authorities under applicable laws;

h.    Prospective purchasers and assignees in the event Morgan Stanley's business, or a portion thereof, is sold or assigned;

i.    Other third parties as may be required for the purposes set forth within the Privacy Notice, or where Morgan Stanley has obtained the appropriate authorization if required; and

j.     Morgan Stanley may also use and share personal information on an aggregate or deidentified basis (such that it does not identify individuals) for various business purposes, where permissible under applicable laws.[21]

42.     In its Privacy Notice disclaimers, Morgan Stanley agrees "[t]o protect . . . personal information from unauthorized access and use" and that it will "use security measures that comply with federal law . . . includ[ing] computer safeguards and secured files and buildings."[22]

43.     Morgan Stanley's Privacy Policy disclaimers further touts that "[w]e have policies governing the proper handling of customer information by personnel and requiring third parties that provide support to adhere to appropriate security standards with respect to such information."[23]

**D.     The Personal Information and Privacy of Consumers is Highly Valuable**

44.     Morgan Stanley is, and at all relevant times has been, aware that the PII it collects and maintains is highly sensitive and could be used or stolen by unauthorized third parties.

45.     Morgan Stanley is, and at all relevant times has been, aware of the importance of safeguarding its customers' PII and of the foreseeable consequences that would occur if its PII and data security systems were not properly encrypted or were otherwise lost, stolen, or breached.

---

[21] *Id.*

[22] Morgan Stanley, *U.S. Customer Privacy Notice*, Disclaimers (April 2019), *available at* https://www.morganstanley.com/disclaimers/im-customer-privacy-notice.pdf.

[23] *Id.*

46.     The types of information unencrypted, lost, and compromised in the Data Breach are highly valuable to identity thieves.

47.     According to the United States Government Accountability Office ("GAO"), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities, such as credit card fraud, telephone or utilities fraud, bank fraud and government fraud (*i.e.*, theft of government services). Identity theft occurs when a person's PII is used without authorization to commit fraud or other crimes.[24] According to the FTC:

> Identity theft is a serious crime. People whose identities have been stolen can spend months or years – and thousands of dollars – cleaning up the mess the thieves have made of a good name and credit record. In the meantime, victims of identity theft may lose job opportunities, be refused loans for education, housing, or cars, and even get arrested for crimes they didn't commit. Humiliation, anger, and frustration are among the feelings victims experience as they navigate the process of rescuing their identity.[25]

48.     Once stolen, PII—including Plaintiff's and the Class Members' information disclosed and compromised in the Data Breach—can be used in a number of different ways: "[Identity thieves] can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[26] One of the most common uses by identity thieves is that stolen PII is offered for sale on the "Dark Web," or cyber black

---

[24] *See* Federal Trade Commission, *Take Charge: Fighting Back against Identity Theft*, FTC.GOV, *available                           at*                           https://www.richmondfed.org/-/media/richmondfedorg/banking/education_for_bankers/fraud_awareness/pdf/idtheft.pdf.

[25] *Id.* at 1.

[26] Federal Trade Commission, *Warnings Signs of Identity Theft*, Consumer Information, FTC.GOV, *available at* https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft.

market, a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website.[27]

49.    The problems associated with identity theft are intensified by the fact that many identity thieves may wait years before attempting to use the PII they have obtained. Indeed, a GAO study found that "stolen data may be held for up to a year or more before being used to commit identity theft."[28]

50.    The unauthorized disclosure of a person's Social Security number can be particularly harmful since Social Security numbers cannot be easily replaced like other forms of PII, such as credit card or debit card numbers. In order to obtain a new Social Security number, a person must show evidence that someone used the number fraudulently and the victim is being disadvantaged by the misuse.[29] Thus, a PII theft victim cannot obtain a new Social Security number until the damage has already occurred.[30]

51.    Obtaining a new Social Security number is also not an absolute prevention against identity theft and identity fraud. Government agencies, private businesses and credit reporting

---

[27] *See, e.g.*, Chad M.S. Steel, *Stolen Identity Valuation and Market Evolution on the Dark Web*, 13 INT'L J. CYBER CRIMINOLOGY 74 (June 2019) (noting the prevalence of the Dark Web for illicit transactions, including identity information), *available at* https://www.cybercrimejournal.com/Steelvol13issue1IJCC2019.pdf.

[28] *See* United States Government Accountability Office, *Personal Information*, Report to Congressional Requesters at 29 (June 2007), *available at* https://www.gao.gov/new.items/d07737.pdf.

[29] *See Identity Theft and Your Social Security Number*, SSA Publication No.05-10064 (October 2007)*, available at* http://www.ssa.gov/pubs/10064.html.

[30] Federal Trade Commission, *Signs of Identity Theft*, *available at* http://www.consumer.ftc.gov/articles/0271-signs-identity-theft.

companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start.[31]

52.     While Morgan Stanley had months to figure out how to protect and minimize the harm to Plaintiff and Class Members from the Data Breach, Morgan Stanley delayed notification of the Data Breach and has offered its customers only two years of credit monitoring service. The offered credit monitoring service is inadequate to protect Plaintiff and the Class Members from the damages inflicted upon them, as they have been harmed and continue to face the looming threat of additional harm and data insecurity for the indefinite future.

53.     The injuries to Plaintiff and the Class Members were directly and proximately caused by Morgan Stanley's failure to implement or maintain adequate data security measures for its current and former customers' PII.

## V. CLASS ALLEGATIONS

54.     Plaintiff brings this action on behalf of themselves and all other similarly situated Class Members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class:

> **All individuals in the United States (including its Territories and the District of Columbia) whose PII was compromised in the data breach first announced by Morgan Stanley on or about July 9, 2020.**

55.     Excluded from the Class are (1) Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; (2) all current or former employees of Defendant; (3) Defendant's legal representatives, successors, and assigns; (4) all persons who make a timely election to be excluded from the class; (5) any

---

[31] *See* Social Security Administration, *Identity Theft and Your Social Security Number* at 6, SSA.GOV, *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf.

and all government entities; and (6) any judicial officer presiding over any aspect of this matter, members of their immediate family, and members of their judicial staff.

56.    The proposed Class is ascertainable and the Class Members share a well-defined community of interest in common questions of law and fact. Furthermore, this action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

57.    Plaintiff reserves the right to modify, amend, or expand the definition of the proposed Class before any court determines whether class certification is appropriate following discovery and further investigation.

58.    **Numerosity.** Pursuant to Federal Rule of Civil Procedure 23(a)(1), the Class is so numerous and geographically dispersed that joinder of all members is impracticable. Plaintiff is informed and believes that there are thousands of members of the Class. The precise number of Class members is unknown to Plaintiff, however, the Class Members can be readily identified and ascertained through records under Morgan Stanley's possession, custody, or control. Adequate notice can be given to the Class Members directly by recognized, Court-approved notice methods, which may include U.S. mail, electronic mail, internet posting, and/or other published notice.

59.    **Commonality and Predominance.** Pursuant to Federal Rules of Civil Procedure 23(a)(2) and (b)(3), as to the Class, this matter involves common questions of fact and law, which predominate over any questions affecting individual Class Members, including, without limitation:

    a.    Whether Morgan Stanley engage in the wrongful conduct alleged herein;

    b.    Whether Morgan Stanley owed a duty of care to Plaintiff and the Class Members with respect to the security of their PII;

16

c.    Whether Morgan Stanley owed a duty not to disclose the PII of Plaintiff and the Class Members to unauthorized third parties;

d.    Whether Morgan Stanley violated federal and state laws, thereby breaching its duties to Plaintiff and the Class Members.

e.    Whether Morgan Stanley wrongfully waited to inform Plaintiff and the Class Members that their PII was exposed and compromised in the Data Breach;

f.    Whether Morgan Stanley's failure to safeguard and protect Plaintiff's and Class Members' PII constitutes invasion of privacy;

g.    Whether Morgan Stanley's failure to safeguard and protect Plaintiff's and Class Members' PII constitutes breach of an express or implied contract;

h.    Whether Morgan Stanley continues to breach duties owed to Plaintiff and Class Members and continues to fail to adequately protect and maintain PII and other sensitive customer information;

i.    Whether Morgan Stanley adequately addressed or remedied the vulnerabilities and failures which permitted the Data Breach to occur

j.    Whether Morgan Stanley has taken adequate preventative and precautionary measures to ensure that Plaintiff and the Class Members are not further harmed;

k.    Whether Plaintiff and the Class Members suffered injury as a direct and proximate result of Morgan Stanley's conduct or failure to act; and

l.    Whether Plaintiff and the Class Members are entitled to recover damages, equitable relief, and other relief, and the extent of the remedies that should be afforded to Plaintiff and the Class Members.

60.    **Typicality.** Pursuant to Federal Rule of Civil Procedure 23(a)(3), Plaintiff's claims are typical of the claims of other the Class Members because the PII of Plaintiff and Class Members were exposed and/or improperly disclosed in the same way by the same conduct by Morgan Stanley.

61.    **Adequacy of Representation.** Pursuant to Federal Rule of Civil Procedure 23(a)(4), Plaintiff is an adequate class representative of the Class, as Plaintiff's interests are not antagonistic to, or in conflict with, the interest of the Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and data breach litigation, and Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the Class' interests.

62.    **Superiority.** Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class action is superior to any other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. Individual litigation of the claims of all Class Members is impracticable, as the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Morgan Stanley. Further, individual litigation by each Class Member would be unduly burdensome on the courts and would create the risk of inconsistent or varying adjudications. On the other hand, a class action of the claims of Plaintiff and the Class Members presents fewer management difficulties and conserves the resources of the parties and the courts.

63.    **Injunctive and Declaratory Relief.** Pursuant to Federal Rule of Civil Procedure 23(b)(2), Morgan Stanley has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

## COUNT I
### Negligence
### (Individually and Behalf of the Class)

64.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in every preceding paragraph as if fully set forth herein.

65.    Morgan Stanley collected and maintained PII from Plaintiff and the Class Members in exchange for goods and services.

66.    Morgan Stanley owed Plaintiff and the Class Members, as customers, a duty to maintain confidentiality and to exercise reasonable care in safeguarding, protecting, and preventing disclosure of their PII to all unauthorized third parties. This duty includes, among other things, designing, maintaining, and testing Morgan Stanley's security protocols to ensure that Plaintiff's and the Class Members' PII in Morgan Stanley's possession was adequately secured and protected.

67.    Morgan Stanley breached its duty by failing to exercise reasonable care in its safeguarding, protecting, and preventing unauthorized disclosure of Plaintiff's and the Class Members' PII.

68.    Morgan Stanley knew, or should have known, of the inherent risks of collecting, storing, and maintaining Plaintiff's and the Class Members' financial and personal information that Morgan Stanley solicited, obtained, and maintained.

69.    It was reasonably foreseeable that Morgan Stanley's failure to exercise reasonable care in safeguarding, protecting, and preventing disclosure of Plaintiff's and the Class Members' PII would result in an unauthorized third party gaining access to such information for nefarious purposes.

70.     As a direct and proximate result of Morgan Stanley's negligent conduct described herein, Plaintiff and the Class Members' have suffered injury (and continue to suffer injury) and are entitled to damages in an amount to be proven at trial.

## COUNT II
### Negligence *Per Se*
### (Individually and on Behalf of the Class)

71.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in every preceding paragraph as if fully set forth herein.

72.     At all relevant times, Morgan Stanley was required (and continues to be required) to comply with, *inter alia*, the Federal Trade Commission Act ("FTCA").

73.     Morgan Stanley's failure to use reasonable measures to protect Plaintiff's and Class Members' PII and to comply with applicable industry standards violates Section 5 of the FTCA. Although the FTCA does not create a private right of action, the FTCA requires businesses to institute reasonable data security measures, which Morgan Stanley failed to do.

74.     Section 5 of the FTCA, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by businesses, such as Morgan Stanley's, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form the basis of Morgan Stanley's duty.

75.     Morgan Stanley violated Section 5 of the FTCA by failing to use reasonable measures to protect PII and not complying with applicable industry standards. Morgan Stanley's conduct complained of was particularly unreasonable given the nature and amount of PII that Morgan Stanley solicited, obtained, and stored and the foreseeable consequences of the Data

Breach at a financial services company of Moran Stanley's size and stature, including the amount of damages that would result to consumers like Plaintiff and the Class Members.

76.     Morgan Stanley's violations of Section 5 of the FTCA constitute negligence *per se*.

77.     Plaintiff and the Class Members are within the class of persons that the FTCA was intended to protect.

78.     Further, the harm that occurred is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures, caused the same harm as that suffered by Plaintiff and the Class Members.

79.     As a direct and proximate result of Morgan Stanley's negligence *per se*, Plaintiff and the Class Members have suffered injury (and continue to suffer injury) and are entitled to damages in an amount to be proven at trial.

## COUNT III
### Breach of Contract
### (Individually and on Behalf of the Class)

80.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in every preceding paragraph as if fully set forth herein.

81.     Plaintiff and the Class Members who paid Morgan Stanley for its goods and services during the period in which the Data Breach occurred had express and implied contracts with Morgan Stanley.

82.     Specifically, Morgan Stanley's Privacy Policy is an agreement between Morgan Stanley and the customers who provided their PII to Morgan Stanley, including Plaintiff and the Class Members.

83.     Morgan Stanley's Privacy Policy states, among other things, that Morgan Stanley "may share Personal Information at your request" or to certain listed and authorized recipients. To the contrary, Morgan Stanley's conduct alleged herein directly resulted in the release and disclosure of Plaintiff and Class Members' PII to unauthorized third parties.

84.     In addition, Morgan Stanley promised "[t]o protect . . . personal information from unauthorized access and use" and to "use security measure that comply with federal law . . . include[ing] computer safeguards and secured files and buildings."

85.     Morgan Stanley further agreed that "[w]e have policies governing the proper handling of customer information by personnel and requiring third parties that provide support to adhere to appropriate security standards with respect to such information."

86.     Morgan Stanley emphasized its "commitment to safeguard the privacy of information our clients entrust to us . . . Protecting the confidentiality and security of client information has always been an integral part of how we conduct our business worldwide."

87.     By providing that PII and upon Morgan Stanley's acceptance of such information, Plaintiff and the Class Members, on the one hand, and Morgan Stanley, on the other hand, entered into a contract when Plaintiff and the Class Members purchased and obtained goods and services from Morgan Stanley, or otherwise provided PII to Morgan Stanley subject to Morgan Stanley's Privacy Policy.

88.     Plaintiff and the Class Members fully performed their obligations under the contracts with Morgan Stanley.

89.     Had Plaintiff and the Class Members known that Morgan Stanley does not adequately safeguard, and protect customer PII, Plaintiff and the Class Members would have never provided and entrusted their PII to Morgan Stanley.

90.     Morgan Stanley breached its agreement with Plaintiff and the Class Members by failing to adequately safeguard, protect, and prevent the disclosure of Plaintiff's and the Class Members' PII. Specifically, Morgan Stanley: (1) failed to take reasonable steps to use safe and secure systems to protect that PII; (2) failed to have appropriate security protocols and measures in place to protect that PII; (3) and allowed for the disclosure of that PII to unauthorized third parties.

91.     As a direct and proximate result of Morgan Stanley's breaches of contract, Plaintiff and the Class Members sustained actual losses and damages as described in detail above, and are also entitled to recover nominal damages.

92.     Accordingly, Plaintiff and the Class Members have been injured as a proximate result of Morgan Stanley's breaches of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT IV**
**Invasion of Privacy**
**(Individually and on behalf of the Class)**

93.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in every preceding paragraph as if fully set forth herein.

94.     Plaintiff's and the Class Members' PII was and is private information. Plaintiff and the Class Members were and are reasonable in their belief and expectation that customer PII should be and would be kept private by Morgan Stanley, and that Morgan Stanley would not disclose, disseminate, or otherwise make public such PII without Plaintiff's and the Class Members' authorization and consent.

95.     Plaintiff and the Class Members had a legitimate expectation of privacy of their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

96.     Morgan Stanley's failure to secure, safeguard, protect Plaintiff's and the Class Members' PII directly resulted in the release and disclosure of Plaintiff's and Class Members' PII to unknown and unauthorized third parties. At a minimum, and as a direct and proximate result of Morgan Stanley's invasions of privacy, Plaintiff and the Class Members' PII has been viewed or is at imminent risk of being viewed, and their reasonable expectations of privacy have been intruded upon and frustrated.

97.     In failing to adequately secure, safeguard, and protect Plaintiff's and Class Members' PII, Morgan Stanley in reckless disregard of Plaintiff's and Class Members' privacy rights. Morgan Stanley knew or should have known that its substandard data security measures would be highly offensive to a reasonable person in the same position as Plaintiff and Class Members.

98.     The dissemination of Plaintiff's and the Class Members' PII to unauthorized third parties is not a legitimate public concern and is highly offensive to Plaintiff, Class Members, and other reasonable persons.

99.     Plaintiff and the Class Members were and are injured as a direct and/or proximate result of Morgan Stanley's invasion of their privacy by disclosing their PII. At a minimum, Plaintiff and the Class Members are entitled to nominal damages.

## COUNT V
### Unjust Enrichment
### (Individually and on behalf of the Class)

100.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in every preceding paragraph as if fully set forth herein.

101.    Plaintiff and the Class Members enriched Morgan Stanley by conferring upon Morgan Stanley the non-gratuitous benefits of monies paid and the PII provided for the purchase of goods and services from Morgan Stanley. These non-gratuitous benefits were conferred at Plaintiff's and the Class Members' expense.

102.    Had Plaintiff and the Class Members known that Morgan Stanley would not adequately safeguard, protect, and prevent unauthorized disclosures of customer PII, Plaintiff and the Class Members would have never provided and entrusted their monies and PII to Morgan Stanley.

103.    Morgan Stanley had knowledge of and appreciated the non-gratuitous benefits conferred by Plaintiff and the Class Members by appreciating revenues derived from Plaintiff's and the Class members' PII and purchases of Morgan Stanley's goods and services.

104.    Morgan Stanley accepted or retained the non-gratuitous benefits conferred by Plaintiff and the Class Members.

105.    Under the circumstances, it would be unjust and inequitable to allow Morgan Stanley to retain the non-gratuitous benefits conferred upon Morgan Stanley by Plaintiff and the Class Members. Morgan Stanley failed to implement the data management and security measures that are mandated by law and industry standards.

106.    Plaintiff and Class Members were unaware of and could not have known about Morgan Stanley's inadequate data security practices. Further, Plaintiff and Class Members could not have avoided the injuries Plaintiff and the Class Members sustained.

107.    Morgan Stanley should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and the Class Members all unlawful or inequitable proceeds that it unjustly received from Plaintiff and the Class Members as a result of the conduct and Data Breach alleged herein. At a minimum, Morgan Stanley must pay restitution to Plaintiff and the Class Members for unjust enrichment, as ordered by the Court.

## COUNT VI
### Declaratory and Injunctive Relief
### (Individually and on behalf of the Class)

108.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in every preceding paragraph as if fully set forth herein.

109.    Morgan Stanley has failed to live up to its obligations to adequately safeguard, protect, and prevent disclosure of PII to unauthorized third parties, as indicated by the specific Data Breach that precipitated this lawsuit.

110.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, the Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious and which violate the terms of the standards and statutes described above.

111.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Morgan Stanley's common law and other duties to act reasonably with respect to safeguarding, protecting, and preventing the unauthorized disclosure of Plaintiff's and the Class Members' PII.

Morgan Stanley's actions and omissions were inadequate and unreasonable, and upon information and belief, remain inadequate and unreasonable.

112.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Morgan Stanley owes a legal duty to secure the PII to which it is provided and entrusted;

    b.    Morgan Stanley continues to breach this legal duty by failing to employ reasonable measures to secure its customers' personal and financial information; and

    c.    Morgan Stanley's breach of its legal duty continues to cause harm to Plaintiff and the Class.

113.    The Court should also issue corresponding injunctive relief requiring Morgan Stanley to employ adequate security protocols consistent with industry standards to protect its customers' personal and financial information.

114.    If an injunction is not issued, Plaintiff and the Class Members will continue to suffer irreparable injury and lack an adequate legal remedy in the event of another Morgan Stanley Data Breach or another Morgan Stanley failure to adequately safeguard, protect, and prevent the unauthorized disclosure of Plaintiff's and the Class Members' PII.

115.    If another Morgan Stanley Data Breach occurs or if Morgan Stanley fails to adequately safeguard, protect, and prevent the unauthorized disclosure of PII, Plaintiff and the Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class

Members for their out-of-pocket damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class Members, which include monetary damages that are not legally quantifiable or provable, reputational damage, and damage as a result of Morgan Stanley's invasion of Plaintiff's and the Class Members' privacy as alleged herein.

116.    Additionally, if an injunction is not issued with respect to Morgan Stanley's invasion of Plaintiff's and the Class Members' privacy, as alleged herein, Plaintiff will not have an adequate remedy at law and will continue to suffer injury. The PII stored and maintained by Morgan Stanley can continue to be used by authorized third parties and Plaintiff and Class Members' invasion of privacy is still continuing.

117.    The hardship to Plaintiff and the Class Members if an injunction does not issue exceeds the hardship to Morgan Stanley if an injunction is issued.

118.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach and by preventing additional incidents whereby Morgan Stanley again fails to adequately safeguard, protect, and prevent the unauthorized disclosure of customer information and PII, therefore eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all Class Members, requests judgment against the Defendant and that the Court grant the following:

A.    For an Order certifying the Class as defined herein and appointing Plaintiff as the Class Representative and his counsel as Class Counsel;

B.    For declaratory judgment in favor of Plaintiff and the Class;

C.      For injunctive relief to Plaintiff and the Class;

D.      For an award of damages, including actual, nominal, punitive and consequential damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For pre-judgment and post-judgment interest to the maximum extent allowable; and

G.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff on behalf of himself and all others similarly situated hereby demands a trial before a jury on all issues so triable.

Dated:  August 18, 2020

Respectfully submitted,

/s/ *Janine L. Pollack*
Janine L. Pollack
Michael Liskow
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036-5803
Tel: (212) 899-1761
Fax: (332) 206-2073
jpollack@calcaterrapollack.com
mliskow@calcaterrapollack.com

Michael L. Roberts
Karen Sharp Halbert
William R. Olson
**ROBERTS LAW FIRM, P.A**.
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone: (501) 821-5575
Facsimile: (501) 821-4474
Email: mikeroberts@robertslawfirm.us
Email: karenhalbert@robertslawfirm.us
Email: williamolson@robertslawfirm.us

Erich P. Schork
Anthony L. Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph St., Suite 1630
Chicago, IL 60606
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
Email: e.schork@barnowlaw.com
Email: aparkhill@barnowlaw.com

*Counsel for Plaintiff*